IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10CR3108 |
| | ) | |
| v. | ) | |
| | ) | FINDINGS, RECOMMENDATION |
| THOMAS COLEMAN, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

Defendant Thomas Coleman ("Coleman") has filed a motion to suppress evidence obtained as a result of a traffic stop, (filing no. 20).[1]  For the reasons set forth below, the motion should be denied.

STATEMENT OF FACTS

On July 31, 2010, Coleman was driving a motor home east on Interstate 80 in Hall County, Nebraska. Nebraska State Trooper Jason Bauer ("Trooper Bauer") was parked in the median, facing east, between the eastbound and westbound lanes on Interstate 80. At approximately 10:00 a.m., Trooper Bauer observed two vehicles with Florida license plates traveling eastbound. The second vehicle was Coleman's motor home. Trooper Bauer pulled onto the interstate and began following Coleman.

Shortly after he began following Coleman, Trooper Bauer observed Coleman's motor home swerve over the shoulder fog line of the interstate. The motor home crossed the fog line again approximately a mile to a mile and a half later. Trooper Bauer explained that each

---

[1] Coleman later amended the motion to suppress, (filing no. 22) and filed a supplemental motion to suppress, (filing no. 25). This Findings and Recommendation will address the issues presented in all three of Coleman's motions to suppress evidence.

time the motor home swerved, the passenger side tires straddled the fog line and crossed onto the shoulder of the interstate. Trooper Bauer activated his in-car video recorder as the motor home was moving back into his lane of traffic after it had crossed the fog line for the second time. After following the motor home for approximately 25 to 30 seconds, Trooper Bauer observed the motor home swerve onto the shoulder of the road again, this time to avoid a piece of debris in its lane. At that point, Trooper Bauer activated his emergency lights and initiated a traffic stop of the motor home.

Trooper Bauer instructed Coleman to exit the motor home and had him sit in the passenger seat of Trooper Bauer's patrol car. Trooper Bauer joined Coleman in the patrol car and began writing a warning ticket for driving on the shoulder of the road. Trooper Bauer also checked Coleman's license status and criminal history. While waiting to receive the information from dispatch, Trooper Bauer inquired into Coleman's travel plans. Coleman responded that he was traveling around the country selling cleaning supplies and was headed to Sioux City, Iowa. Trooper Bauer also asked Coleman if he had ever been arrested. Coleman responded that he had not. However, dispatch informed Trooper Bauer that Coleman had an "extensive" criminal history involving "narcotics, robbery, and weapons offenses."[2]

After receiving the information regarding Coleman's criminal history from dispatch, Trooper Bauer again asked Coleman if he had ever been arrested. Coleman continued to

---

[2] Trooper Bauer received information from dispatch approximately fourteen (14) minutes into the stop. Apparently, dispatch was unable to locate any information on Coleman based on the information on his Florida driver's license. After learning of this difficulty, Trooper Bauer asked Coleman for his social security number. Coleman provided his social security number which enabled Trooper Bauer to receive a full report of Coleman's background and criminal history.

2

assert that he had never been arrested. Trooper Bauer then asked Coleman when he had last used drugs. Coleman admitted to using marijuana within the past couple of months while he was in California. Trooper Bauer asked Coleman if he had a card for medical marijuana, and if he had any medical marijuana with him at that time. Coleman stated that he did and that it was in a bottle in the front of the motor home. Trooper Bauer informed Coleman that a medicinal marijuana card is not valid in Nebraska and it is illegal to possess marijuana in Nebraska.

Trooper Bauer patted Coleman down, placed him in the back of the patrol car and went to the motor home to retrieve the marijuana and search the vehicle. Trooper Bauer entered the motor home on the passenger side door and conducted a sweep of the bathroom, bedroom and under the bed. While looking under the bed, Trooper Bauer found a black bag he believed to be consistent with similar types of bags used to carry weapons.[3] Trooper Bauer unzipped the bag and found "a high-point rifle with a magazine inserted in it with ten rounds of ammo in it as well as boxes of ammo." Trooper Bauer also found the bottle of marijuana in the front of the vehicle.[4] Trooper Bauer returned to his patrol car and confirmed Coleman's criminal history with dispatch[5] and arrested him.

---

[3] Trooper Bauer testified that he used a similar looking bag to carry his patrol rifle.

[4] Trooper Bauer described the amount of marijuana found as "less than half an ounce."

[5] Some of Coleman's criminal history appeared under aliases, but Trooper Bauer was able to match the offenses to Coleman based on Coleman's social security number and an identifying scar on his face.

LEGAL ANALYSIS

Coleman claims the evidence seized from his motor home should be suppressed for the following reasons:

- Trooper Bauer did not have probable cause to initiate a traffic stop because Coleman did not violate any Nebraska traffic laws. Filing No. 40, p. 2.

- Trooper Bauer impermissibly prolonged the traffic stop without reasonable suspicion in violation of Coleman's Fourth Amendment rights. Filing No. 21, p. 2.

- Coleman's Fifth Amendment rights were violated because Trooper Bauer subjected him to a custodial interrogation without the benefit of being first read his Miranda warnings. Filing No. 40, p. 3.

- The search of his motor home was impermissible because Trooper Bauer was not given consent to search and because Coleman was entitled to a higher expectation of privacy in his motor home. Filing No. 40, p. 6.

These contentions are discussed below.

## The Fourth Amendment

Coleman asserts his Fourth Amendment rights were violated in a number of instances throughout the course of the traffic stop and the search of his motor home.

### 1.   The initial traffic stop.

Coleman argues Trooper Bauer did not have the requisite probable cause to initiate a traffic stop. Specifically, he contends that there is no evidence he drove on the shoulder of the road, other than to avoid debris in his lane. Alternatively, he argues, even if he did

momentarily cross the fog line, that action does not constitute a violation of Neb. Rev. Stat. § 60-6,142.

### a. Evidence of crossing the fog line.

Before he activated his in-car camera, Trooper Bauer observed Coleman swerve over the fog line twice.[6] "It is well established that any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." United States v. Washington, 455 F.3d 824, 826 (8th Cir. 2006). "To determine whether a traffic stop was based on probable cause or was merely pretextual, an 'objective reasonableness' standard is applied." United States v. Mallari, 334 F.3d 765, 766 (8th Cir. 2003). That is, "[a]n officer is justified in stopping a motorist when the officer 'objectively has a reasonable basis for believing that the driver has breached a traffic law.' " Id. at 766-67 (quoting United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996)). Where an officer's "understanding of the law is simply unreasonable . . . the officer's belief that there is a traffic violation would not be sufficient to establish probable cause to stop the vehicle." Id. at 913 n. 3. But [t]he determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." United States v. Sanchez, 572 F.3d 475, 478 (8th Cir. 2009) (quoting United States v. Sanders, 196 F.3d 910, 913 (8th Cir. 1999)). Law enforcement officers are not required "to interpret the traffic laws with the subtlety and expertise of a criminal defense attorney." Sanders, 196 F.3d at 913.

---

[6] Coleman's argument that no evidence exists he ever crossed the fog line, except to avoid debris in his lane, is without merit. Trooper Bauer credibly testified he observed Coleman twice swerve over the fog line prior to the time Trooper Bauer activated his in-car video recorder.

5

The government asserts Coleman violated Neb. Rev. Stat. § 60-6,142, which provides:

No person shall drive on the shoulders of highways, except that:

(1) Vehicles may be driven on the shoulders of highways (a) by federal mail carriers while delivering the United States mail or (b) to safely remove a vehicle from a roadway;

(2) Implements of husbandry may be driven on the shoulders of highways; and

(3) Bicycles and electric personal assistive mobility devices may be operated on paved shoulders of highways included in the state highway system other than Nebraska segments of the National System of Interstate and Defense Highways.

Neb. Rev. Stat. § 60-6,142.

When interpreting a particular statute, "[s]tate courts are the ultimate expositors of state law." United States v. Adler, 590 F.3d 581, 584 (8th Cir. 2009)(quoting Mullaney v. Wilbur, 421 U.S. 684, 691 (1975)). However, very little Nebraska law exists regarding the interpretation of the term "driving" as it is used in Neb. Rev. Stat. § 60-6,142. Perhaps the most authoritative statement on point can be found in Nebraska v. Davis, case no. A-07-104, 2007 WL 2257886 (Neb. App. Aug. 7, 2007). In overturning a lower court decision, the Nebraska Court of Appeals, found an officer had reasonable, articulable suspicion to initiate a traffic stop when the officer witnessed a vehicle swerve momentarily over the fog line. Although the court found the mere act of weaving provided sufficient basis for the stop, the court further opined that no authority existed for the lower court's conclusion that momentary, inadvertent crossing of the fog line was not a violation of Neb. Rev. Stat. § 60-6,142. In other words, the court could find no reason or authority from which to deduce that

even a momentary crossing of the fog line was not a violation of Neb. Rev. Stat. § 60-6,142.

The Eighth Circuit has considered this statute, and other similar statutes, and found that momentarily veering across the fog line is a violation of state law. See United States v. Mallari, 334 F.3d 765 (8th Cir. 2003); United States v. Pollington, 98 F.3d 341 (8th Cir. 1996); see also United States v. Herrera Martinez, 354 F.3d 932, 934 (8th Cir. 2004)(vacated on other grounds) (finding probable cause under South Dakota law when an officer initiated a traffic stop of a vehicle that had crossed the shoulder fog line once); but see United States v. Magallanes, 730 F.Supp.2d 969, 977 (D. Neb. 2010)(finding a driver violates Neb. Rev. Stat. § 60-6,142 only if the driver uses the shoulder for a "thoroughfare" and not if he or she momentarily crosses onto the shoulder).

For instance, in Mallari, a driver was stopped for crossing over the right shoulder lane of the interstate three times and for having a defective rear license plate bulb. The court upheld the denial of the motion to suppress and found that "weaving three times over the shoulder line in a short span of interstate, constitutes a violation of section 60-6,142 and probable cause to stop [the defendant]." Mallari, 334 F.3d at 767. The Eighth Circuit reached a similar conclusion in Pollington. In Pollington, a motor home was stopped after a law enforcement officer observed it crossing the center line of the interstate four times. Pollington, 98 F.3d at 342. The sole basis for the stop was the officer's contention that the swerving constituted a violation of Neb. Rev. Stat. § 60-6,142. Pollington, 98 F.3d at 342. The defendant argued the stop was impermissible, but the court found that contention to be "without merit." Id.

In this case, Trooper Bauer had an "objectively reasonable basis" for believing Coleman was in violation of Nebraska law. Trooper Bauer saw Coleman's vehicle swerve twice over the shoulder fog line of the interstate. Although no definitive interpretation of

7

Neb. Rev. Stat. § 60-6,142 exists in Nebraska state law, its Court of Appeals provided some indication that momentarily swerving across the fog line is indeed a violation of the statute in question. See Davis, 2007 WL 2257886 at *3. Moreover, the Eighth Circuit has at least twice determined that a momentary crossing of the shoulder fog line constitutes driving on the shoulder, and thus violates Neb. Rev. Stat. § 60-6,142. See Mallari, 334 F.3d at 767; Pollington, 98 F.3d at 342. Based on the limited state case law on point and Eighth Circuit law, Trooper Bauer was objectively reasonable in believing Coleman had violated Neb. Rev. Stat. § 60-6,142, and had probable cause to initiate the traffic stop.

    b.  **Investigatory Stop**

  The government argues that even if Trooper Bauer was not objectively reasonable in his belief Coleman was in violation of Neb. Rev. Stat. § 60-6,142, Trooper Bauer was justified in initiating a traffic stop to ensure Coleman was not impaired. A law enforcement officer may stop a vehicle without probable cause "to investigate a reasonable suspicion that its occupants are involved in criminal activity." United States v. Winters, 491 F.3d 918, 921 (8th Cir. 2007)(internal citations omitted).

  Under Nebraska law "a vehicle weaving in its own lane of traffic provides an articulable basis or reasonable suspicion for stopping a vehicle for investigation regarding the driver's condition in operating a weaving vehicle." Nebraska v. Thomte, 226 Neb. 659, 663, 413 N.W.2d 916, 919 (1987); see also Davis, 2007 WL 2257886 at *3 (finding an officer was justified in stopping a car after it swerved over the fog line). Even if innocent explanations for weaving exist, a traffic stop may still be justified.

> There may be some circumstances in which wholly lawful conduct might justify the suspicion that criminal activity is afoot; the purpose of an investigative stop is to clarify ambiguous situations, and even if it is equally

8

> probable that the vehicle or its occupants are innocent of any wrongdoing, police must be permitted to act before their reasonable belief is verified by escape or fruition of the harm it is their duty to prevent.

State v. Gade, 2009 WL 39307 *5 (Neb. App. 2009). Further, "[t]he constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officers involved." United States v. Brooks, 290 Fed.Appx. 955, 959 (8th Cir. 2008)(quoting Whren v. United States, 517 U.S. 806, 813 (1996); see also United States v. Andrews, 465 F.3d 346, 347 (8th Cir. 2006)("[T]he fourth amendment is not violated if an objectively good reason for a traffic stop exists, whatever the actual subjective motive of the officer making the stop may have been.").

The evidence indicates Trooper Bauer was worried about Coleman's condition. The audio from the in-car camera reveals when Trooper Bauer and Coleman were discussing why Coleman was swerving, Trooper Bauer stated he was not sure if Coleman "was tired or what." This statement indicates Trooper Bauer had some concern about Coleman's ability to properly operate the vehicle.

Even if Trooper Bauer was not actually concerned about Coleman's condition, his actual motivations are not the crucial factor in determining whether Trooper Bauer had an adequate basis for making the investigatory stop. If any objectively good reason existed, the stop was permissible. See Andrews, 465 F.3d at 347. Trooper Bauer's observation that the motor home was weaving outside the fog line provided an objectively reasonable basis for stopping Coleman's vehicle to check the condition of its driver. See Gade, 2009 WL 39307 at *5.

9

### 2. The detention of Coleman

Coleman argues that even if the initial stop was legal, the stop was improperly extended because Trooper Bauer asked questions beyond the scope permitted during a routine traffic stop.

### a. Reasonable Suspicion

The government argues that Trooper Bauer was justified in extending the stop because Trooper Bauer had reasonable suspicion that Coleman was engaging in criminal activity based on Coleman's criminal history and his dishonesty under questioning about his past convictions.

> If an officer develops reasonable suspicion regarding unrelated criminal conduct during the course of a lawful traffic stop, "an officer may broaden his inquiry and satisfy those suspicions" without running afoul of the Fourth Amendment. United States v. Jones, 269 F.3d 919, 926-27 (8th Cir.2001) (quotation omitted). Reasonable suspicion requires "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Donnelly, 475 F.3d 946, 952 (8th Cir.2007) (quotation omitted); see also Terry v. Ohio, 392 U.S. 1, 20-21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at the totality of the circumstances, in light of the officer's experience." United States v. Linkous, 285 F.3d 716, 720 (8th Cir.2002) (quotation omitted).

United States v. Gill, 513 F.3d 836, 844 (8th Cir. 2008). In addition, "[a]n officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered." Linkous, 285 F.3d at 720. In other words, the determination of reasonable suspicion is a "common sense" inquiry

10

based on the totality of the circumstances. United States v. Suitt, 569 F.3d 867, 872 (8th Cir. 2009).

In this case, Trooper Bauer had the requisite reasonable suspicion to briefly extend the traffic stop and question Coleman about any potential drug use. Trooper Bauer had initiated the traffic stop because he observed Coleman's motor home swerve over the fog line at least twice.[7] During the course of the stop, Trooper Bauer received criminal history information indicating Coleman had a history of drug offenses, but Coleman was not honest when asked about this history. Coleman's less than forthcoming answers raised justifiable suspicion and prompted Trooper Bauer to broaden his inquiry and seek clarification from Coleman regarding the inconsistencies between his answers and the reported criminal history. See, e.g., Suitt, 569 F.3d at 872 (noting inconsistent or evasive answers may naturally lead to additional clarifying questions from the law enforcement officer); United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993) (finding an officer may broaden his or her inquiry if a detainees responses create suspicions unrelated to the traffic offense).

Trooper Bauer asked Coleman when he last used illegal drugs, knowing he had previous convictions for drug related offenses. In answer to the questions, Coleman volunteered that he recently smoked marijuana and possessed a medicinal marijuana card. This admission only served to increase Trooper Bauer's suspicion that criminal activity may be afoot. In short, Trooper Bauer's suspicions "reasonably grew" based on Coleman's answers to the questions about his previous criminal history and drug use, justifying Trooper Bauer's brief additional questioning. See Linkous, 285 F.3d at 720.

---

[7] Although Trooper Bauer did not testify he was concerned Coleman was impaired, he can be heard on the audio recording of the stop telling Coleman he did not know if Coleman was "tired or what." Eliminating drug use as one possible cause of Coleman's erratic driving was undoubtedly a reasonable course of action for Trooper Bauer.

11

**b.** **De minimis intrusion**

The government further argues that even if reasonable suspicion necessary to justify the questioning of Coleman did not exist, the brief delay in the stop, if any, constituted a mere de minimis intrusion on Coleman's Fourth Amendment rights.

During a valid traffic stop a law enforcement officer may briefly detain a motorist while completing routine tasks such as checks on the vehicle's registration, the validity of the driver's license and a check of the driver's criminal history. United States v. $404,905.00, 182 F.3d 643, 647 (8th Cir. 1999); see also United States v. Coney, 456 F.3d 850, 857 (8th Cir. 2006). There is no bright line limit on the length of a traffic stop as such a determination is highly fact dependent. See Suitt, 569 F.3d at 870-71; United States v. Olivera-Mendez, 484 F.3d 505, 509-10 (8th Cir. 2007). Further, asking brief questions, unrelated to the initial stop, will not convert a permissible stop into an unreasonable seizure. See Olivera-Mendez, 484 F.3d at 511; see also United States v. Robinson, 455 F.3d 832, 834 (8th Cir. 2006)(finding no Fourth Amendment violation for a de minimis intrusion beyond the initial traffic stop).

The Eighth Circuit has consistently held that some questioning outside the initial reason for a traffic stop will generally not constitute unreasonable seizures. For instance, in Olivera-Mendez the defendant was stopped for speeding. While waiting for the dispatcher to relay the results of the driver's license check and prior to issuing the citation, the officer asked Olivera-Mendez if there were any illegal drugs in the car. The court determined that the police officer did not violate Olivera-Mendez's Fourth Amendment rights "by asking three brief questions related to possible drug trafficking amidst his other traffic-related inquiries and tasks." Olivera-Mendez, 484 F.3d at 511.

Likewise in Robinson, a de minimis intrusion beyond the scope of the traffic stop was allowed. In Robinson, the defendant was pulled over for failing to stop at a stop sign. After issuing the warning for the traffic violation, the police officer asked Robinson about an object the officer believed he saw Robinson take from his pocket and hide between the seats. Robinson argued that once the warning was issued the stop should have concluded and any further detention was an impermissible seizure. The court disagreed, noting that even if the law enforcement officer did not have reasonable suspicion to prolong the traffic stop, the brief questioning did not constitute a Fourth Amendment violation. 455 F.3d at 834. "Even if a suspicionless seizure occurred during the period from the conclusion of the traffic stop until the officers unquestionably had probable cause, it was a de minimis intrusion that did not constitute an unreasonable seizure with the meaning of the Fourth Amendment." Id.

Trooper Bauer instructed Coleman to sit in the front of Trooper Bauer's car while Trooper Bauer obtained information from dispatch on Coleman's license, registration and criminal history. The audio recording verifies the stop was briefly prolonged because dispatch was having difficulty locating information on Coleman's Florida driver's license - a completely permissible reason for briefly extending the stop. See Olivera-Mendez, 484 F.3d at 509-10 (noting that "[w]hen there are complications carrying out the traffic-related purposes" the law enforcement officer may detain a driver for a longer duration than would normally be associated with a routine stop). Trooper Bauer requested Coleman's social security number approximately ten (10) minutes into the stop. About fourteen (14) minutes into the stop, Trooper Bauer received the information regarding Bauer's criminal history which consisted of multiple arrests, including drug violations. This information was completely inconsistent with previous answers Coleman had given Trooper Bauer regarding his criminal history. Bauer spent approximately a minute and a half questioning Coleman about his criminal history and whether he had recently used illegal drugs. Coleman responded that he had smoked marijuana within the past couple of months while in

13

California and was in possession of a medicinal marijuana card and, after further questioning from Trooper Bauer, stated he possessed marijuana. All this occurred prior to Trooper Bauer issuing a warning for Coleman's traffic violation and within about two minutes of Trooper Bauer's receipt of Coleman's background information from dispatch. Trooper Bauer's questioning after receiving necessary information from dispatch was a mere <u>de minimis</u> intrusion on Coleman's right to be free from an unreasonable seizure and did not violate his Fourth Amendment rights. See Robinson, 455 F.3d at 834.

### 3. The search of the motor home

Coleman argues the search of the motor home violated his Fourth Amendment rights because the search was not supported by probable cause. He asserts he merely told Trooper Bauer where the marijuana was located, but did not grant permission to search the entire motor home. Coleman further argues he had an increased expectation of privacy because he was living in the motor home. That is, the motor home is more akin to a private residence than a vehicle.

The Eighth Circuit has addressed the standard for a warrantless search of an automobile:

> As long as the law enforcement officials have probable cause, they may search an automobile without a warrant under the automobile exception. <u>See</u> <u>Pennsylvania v. Labron</u>, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). . . . Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place. <u>See</u> <u>Illinois v. Gates</u>, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000). Further, if probable cause is found the law enforcement officer is justified in searching "every part of the vehicle and

its contents that may conceal the object of the search." United States v. Hernandez-Mendoza, 600 F.3d 971, 976 (8th Cir. 2010). The automobile exception recognizes that vehicles are mobile, and therefore evidence can literally drive off while a warrant is sought. United States v. Perry, 925 F.2d 1077, 1084 n. 4 (8th Cir. 1991). The automobile exception therefore applies to both automobiles and mobile homes. See United States v. Carney, 471 U.S. 386 (1985) (upholding a search of a motor home under the automobile exception).

Once Coleman admitted he was carrying marijuana in the motor home, Trooper Bauer had probable cause to search the vehicle. United States v. Caves, 890 F.2d 87, 90 (8th Cir. 1989)(holding officers had probable cause to search an automobile for unused marijuana where the driver's person and breath smelled like burnt marijuana). Coleman's argument that Trooper Bauer should have restricted his activities to merely retrieving the container of marijuana and ignored the remainder of the vehicle is without merit and unsupported by law. Under the automobile exception, Trooper Bauer was entitled to search every part of the motor home where contraband could have been concealed, including under the bed. See Hernandez-Mendoza, 600 F.3d at 976. Trooper Bauer was not required to restrict the search, nor was Coleman's consent necessary.

Moreover, even assuming as defendant argues, that the scope of a roadside search should be narrowed when the vehicle is a mobile home, unlike an automobile a mobile home can hide others who may pose a risk of harm to the officer. Officers may take "additional steps as are 'reasonably necessary to protect their personal safety and maintain the status quo during the course of a stop.'" United States v. Thomas, 249 F.3d 725, 729 (8th Cir. 2001) (internal citations removed). Since Trooper Bauer did not know if anyone else was in the defendant's vehicle, he was entitled to perform a protective sweep of the motor home and search areas where another individual may be hiding – including under the bed. See

15

Thomas, 249 F.3d at 729 (upholding a protective sweep of a van when the officer could not see into a van from the outside).

## **Fifth Amendment**

Coleman also argues Trooper Bauer violated his Fifth Amendment rights by asking Coleman when he last used drugs and if he had any illegal drugs with him. The government contends Coleman was never "in custody" for the purposes of the Fifth Amendment and was not entitled to Miranda warnings.

Miranda warnings are required when an individual has been subjected to a "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). The warnings are necessary "to dispel the compulsion inherent in custodial surroundings." Id. at 444. The "in custody" determination for the Miranda purposes rests on "whether (1) the person has been formally arrested, or (2) the person's freedom of movement has been restrained to the degree associated with formal arrest." United States v. Martinez, Jr., 462 F.3d 903, 909-10 (8th Cir. 2006). Even if a motorist is seized during a traffic stop, Miranda warnings "are not required where the motorist is not subjected to the functional equivalent of a formal arrest." United States v. Morse, 569 F.3d 882, 884 (8th Cir. 2009) (citing Berkemer v. McCarty, 468 U.S. 420, 436-37 (1984)).

When Trooper Bauer questioned Coleman, they were sitting in the front seat of Trooper Bauer's patrol car. Coleman was not handcuffed, the tone of the questioning was conversational, and the questions were limited in number and scope. See Morse, 569 F.3d at 884. Prior to the admission that he had marijuana in his motor home, Coleman was also never told that his detention would be anything but temporary – thus, he had no reason to believe he would not be released. See United States v. Martin, 411 F.3d 998, 1002-03 (8th

16

Cir. 2005); see also United States v. Rodriguez-Arreola, 270 F.3d 611, 617 (8th Cir. 2001). Based on all of the facts and circumstances, Coleman was not in custody for the purposes of the Fifth Amendment and Trooper Bauer was not required to read Miranda warnings to Coleman prior to asking him if about his past drug use and possession.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by Thomas Coleman, and the subsequent amendment and supplement, (filing nos. 20, 22 and 25) be denied in all respects.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the trial of this case is set to commence before the Honorable Richard G. Kopf at 9:00 a.m. on June 27, 2011, or as soon thereafter as the case may be called, for a duration of three (3) trial days, in Courtroom 1, United States Courthouse, Lincoln, Nebraska. Jury selection will be held at commencement of trial.

DATED this 20th day of May, 2011.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

17